1188, Ms. Kelly. Thank you, Your Honors. May it please the Court. Christina Caggiano-Kelly on behalf of Appellant Rovi Guides. The Board in this case erred when it failed its mandate to decide the patentability of every claim limitation on the merits and point to evidence in the record supporting its decision. In this case, the Board observed during the oral hearing that Comcast had failed to present a preponderance of evidence that the Wogofsky reference discloses a set-top box. Comcast asked the parties—or, sorry, the Board asked the parties—to address the issue. Comcast did not at the hearing point to any evidence in the record, but instead presented what was sort of a means-plus-function analysis of the claim language. Yes, but the Board pointed to evidence in its decision, right? It didn't just rely on your failure to raise the issue. Well, if we look at the final written decision, that's at the appendix at page 32. At the top of the page, the Board first states, the parties do not dispute that Wogofsky teaches a set-top box and cites C generally to patent owner's response. First, that is false as a matter of fact because at the oral hearing when the Board raised the issue and asked Counsel for Rovi, do you dispute this a set-top box is in the specification at Figure 2, and computer convergence environments are an alternative, that is Figure 3, and we should win on that basis. So, first, the Board has mischaracterized it, and by citing generally only to patent owner's response and ignoring what happened at the hearing, the premise of the Board's decision is wrong. If we go to the next paragraph, which is what I think your question was originally getting at, having considered the evidence we agree with Petitioner, the Board then goes on. There is a string cite. None of the evidence cited is explained as to why it supports the Board's decision. These citations are to the Petitioner's briefs. They do parenthetically cite the evidence cited in the Petitioner's brief, but don't identify why that evidence supports the decision. If you look at the parenthetical that follows the string cite, that parenthetical is representative of the types of things the Board is citing to in that string cite, and it's sentences from the Petition that say things like, therefore, computer 110, in parentheses, a set-top box, has the recited control circuitry. That is not evidence that a computer is a set-top box. That is an argument that assumes its premise, that a computer is a set-top box. It identifies the computer and then says parenthetically, this is a set-top box, and then goes on to talk about the control circuitry. That paragraph, and so if we go on to the rest of the paragraph of the Board's final written decision, this paragraph being the entirety of the Board's analysis, that paragraph goes on then to talk about television viewing functionality. It does not say ever that one of skill in the art would understand a computer to literally be a set-top box. Ms. Kelly, why hasn't Roe v. Wade, its argument that Bugofsky doesn't teach a set-top box? Well, I think this Court's precedent in Magnum Oil is clear, that in the IPR setting, the But it's not talking about your obligation to dispute something. It's talking about the burden of production and the burden of persuasion. People have the obligation to raise issues, and if you concede an issue, too bad, right? I would agree with that, but I would say in this case, there is no concession. At the oral hearing, when the Board asked Roe v. Wade, do you concede this issue? If counsel for Roe v. Wade had said, we're not disputing this, then I would agree with you that issue would be waived. But that was not counsel's response. Counsel's response was, yes, we dispute this. And the Board correctly recognized in the hearing that even though Roe v. did not raise the issue in its brief, the burden nonetheless remained on the petitioner to articulate the evidence and nonetheless remained on the Board to decide that Bugofsky discloses a set-top box. That was the Board's stated reason for asking the question and asking the parties to address the issue at the hearing. Which page of the appendix does that appear in? If you look to appendix, it starts, I believe, on appendix 657. Where does Petitioner's counsel say we're disputing this? That is on, that is a, that is, if you go to page, I think, 682. Yes. So it starts at the very bottom of that page, and then at the top of page 683, that is where Roe v.'s counsel states, just briefly on the topic of set-top box, relating back to the Board's previously asked question when the, when Comcast counsel was before it. I would draw the panel's attention to column 2, line 18, where it mentions that the user equipment may include a set-top box. Figure 2 explicitly labels that figure a set-top box. Figure 3 does not. This is relating back to a previous... I don't see that as saying we're disputing the set-top box. Where, where, I thought you said that counsel explicitly said that. Where is counsel explicitly saying that? That's in the, if you go to the next paragraph. The only evidence of record as to the definition of set-top box is entirely consistent with figure 2. So I think as an initial matter, the Board could dispatch the Lugovsky grounds on that aspect of the claims alone. Some of this is a little difficult to understand because it comes out of context. He's referring back to a previous exchange between the Board and counsel for Comcast. So when he says, when he's referring to figure 2 and figure 3, the Board and Comcast already had an exchange in which they discussed that figure 2 explicitly labels a set-top box. Figure 3 discusses a TV computer convergence environment. And figure 2 is what is the claims. And figure 3 is more of what the Lugovsky reference is relating to. And if you look in the specification where it describes the differences... All he says is figure 2 explicitly labels that figure a set-top box. Figure 3 does not. I mean, he doesn't say that figure 3 doesn't show a set-top box. Right, because the Board previously stated that earlier in the transcript in the Board's exchange with counsel for Comcast. So what happened was Roe v. counsel essentially stood up and said, remember that conversation you just had where you identified this problem between figure 2 and figure 3. You are correct. We agree with your problem and we should win because of that. He did not restate everything the Board had previously stated. But if you look back as to what the Board had stated... Don't you think that somebody, having not raised the issue in the brief, had an obligation to raise it more clearly in the oral argument before the Board? Well, I think what happened was at that point, the Board had already, the judges had already discussed at length what the problem was. And so counsel for Roe v. essentially said, what you just said, your honors, you're absolutely correct. And he didn't go on to then restate it so that it would be in the record in his words. He said, yes, figure 2 labels the set-top box, figure 3 does not, summarizing the conclusion that the Board had previously drawn. Then went on to say, there is no evidence of record that the set-top box is anything other than what, as the Board had already stated, is not Wachowski. And the specification expressly says is an alternative. The set-top box is an alternative to a computer convergence environment like that in Wachowski. And then he stated, the Board should dispatch the Wachowski grounds on that aspect of the claims alone. Meaning, because a set-top box is not in the claims, Roe v. should win. And in doing so, that was enough to preserve the issue as one that was not conceded. And the Board, although what Roe v.'s counsel then put into the record may not have been sufficient on its own to rebut anything, the patent owner doesn't have an obligation under Magnum Oil. The patent owner does not have an obligation to rebut something as long as he did not concede it. And the Board acknowledged that there was a problem in the record. And the burden is on them to resolve it on the merits, pointing to specific evidence. And that did not happen. And I think at no point, even if the Board asks a question during oral hearing, at no point does it shift the obligation to patent owner. Does figure 3 show a set-top box? It does not. If you want to look by comparison to figure 2, so you'll find that at appendix at page 129, figure 2 expressly labels a set-top box and shows a set-top box system in which that is the device that is converting the television signals. If you turn the page to appendix 130, figure 3 does not include a set-top box. And if you want to go to the... Well, I'm talking about figure 3 of Wolgowski. Oh, I'm sorry. We know that there's a set-top box in your patent because it's in the claims. Yes. But how about in Wolgowski? And how about in figure 3? So the Board and Comcast did not point to anything in figure 3 as being the set-top box of Wolgowski. The analysis of the Board is that computer 110 is the set-top box because it performs the function that the set-top box performs. So regardless of whether Wolgowski discloses a set-top box in some other embodiment, that is not what the Board relied on, and that cannot be a basis for affirmance under Chenery. You are into your rebuttal time, and let's stop the clock, Mr. Woodard. I want to ask you, you're presumably registered to practice in the Patent Office? I am. What do you understand the purpose of citing prior art references to be? During prosecution? During prosecution, yes. So that the examiner may consider them in whether to allow the claims. In other words, they're relevant to patentability. They are. This patent, I'm sure you didn't draft it, but you're standing here. This patent has 22 columns of cited references, probably between 1,500 and 2,000. It's very difficult to escape the conclusion that the applicant was trying to bury. It didn't even cite Wolgowski. What can be the sound purpose in citing 1,500 to 2,000 references other than to bury the examiner? Well, the Roe v. Family of companies have a lot of different patent applications, all related to similar technologies. And I know that there is an obligation when you have multiple patents that are related to cite all of the prior art references. So five references, 10 references, 22 columns? They do tend to accumulate when you have large patent portfolios, because if you don't cite all of the prior art references you cited for another patent that has your name on it, then the implication is that, well, you purposefully didn't cite it. I can tell you, though, that the Wolgowski reference was expressly discussed by the examiner in his examination of the parent application for this patent and was distinguished on the basis that, or on one of the bases, that the patent owner distinguished it before the board below. And the exact same examiner was the examiner on this patent and was very aware of the Wolgowski reference. Well, you've given pretty good defense, and I commend you for that. But it's not convincing with respect to the citation of 1,500 references. And would you filter back to the originators of this patent that, at least with respect to one judge, it doesn't sit very well? It doesn't leave a good impression of patent prosecution. I was not involved in the prosecution. I only know that, generally, large patent portfolios tend to have lots of cited references. The answer is yes, I'll take it back. I will do that. Thank you. Mr. Silver. Good morning, Your Honors. It will be a pleasure to court. Blair Silver on behalf of Comcast Cable Communications. The board's decision here is correct because substantial evidence underlies the set-top box determination and the other two limitations, which my opposing counsel did not mention today. So I won't address them in my opposing remarks today. But I will note that additional deference is warranted in this case beyond substantial evidence because in every paper and every expert and every party agreed throughout the proceeding that Wolgowski taught a set-top box and that no construction was necessary of a set-top box. That determination is found on page 32 of the appendix, where the board specifically noted that Robey did not contest the issue of set-top box. And we review such determinations on appeal as an abuse of discretion. And Robey has not alleged that the board abused its discretion in that determination. Now, turning to the issue of set-top box, as I mentioned, no dispute, every paper, Wolgowski discloses a set-top box. That's the only evidence of record below. And Comcast's expert was found to be credible and well-reasoned with detailed citations to Wolgowski by the board. That was on appendix page 34. And he testified that computer 110 is a set-top box because it converts content signals, such as cable television signals, to an input signal, to a television set or similar display device. That is consistent with the person of ordinary skills understanding that he testified to for the plain meaning of set-top box and the dictionary definition that Comcast provided in the record of appendix page 1507. Indeed, Robey and its expert repeatedly referred to Wolgowski as having a set-top box in its papers. And we cite a number of those citations on page 27 of our response. Now, Robey has accused the board of limiting its analysis to a single conclusory sentence. And it did that in its brief. Today, it acknowledged that there was at least a paragraph on the issue. In truth, there are three pages of discussion on the set-top box issue in the opinion. And so this is not a circumstance where the board failed to provide a rationale and shifted the burden, as Robey alleges. With regard to the issue of waiver, every IPR has a scheduling order. And in that scheduling order, every patent owner is warned, arguments not raised in the patent owner response will be deemed waived. It is thus not surprising that the board, in its final written decision, having not had an issue raised in the patent owner response, noted that Robey did not directly challenge Comcast's construction of set-top box or that dispute that Wolgowski teaches a set-top box. And that's on appendix page 15. Indeed, we know there was no dispute because Robey was citing the Vivitech case in its patent owner response with regard to set-top box, where this court held that you only need to construe claims subject to dispute. And my counsel on the other side noted that the board had an exchange with Comcast counsel at the IPR and said that we failed to meet our burden. That is incorrect. And if you turn to appendix page 61 to 62, you will see an exchange from one PTAB judge to Comcast counsel asking for clarification on the differences between figure two and figure three. The fact that Robey's counsel later got up, went on its turn, and argued for seven lines of an appendix is not enough to preserve an issue for appeal. And we know that from the Google v. Simple Air case and the MCM case that we cite in our brief. But even if those comments had appeared in a brief earlier, I submit they were insufficient to preserve an issue for appeal because as my opposing counsel just mentioned, they were difficult to understand. Moreover, Robey hasn't articulated any meaning of set-top box that would exclude a computer. And it provided a number of potential definitions, none of which categorically would eliminate a computer that contains functionality of a set-top box. Indeed, we know that set-top box does not exclude computers under the broadest reasonable interpretation because the claims in spec only describe the set-top box in terms of its functionality. Receiving and processing intelligent program listings and tuning desired channels. And there's no dispute that Wogoski's Computer 110 can do this. Indeed, Wogoski's Computer 110 is not just a computer. And we know this again because it's designed to address a problem in the set-top box which the board acknowledged on page 18 of the appendix. And Comcast Expert testified as a result of its convergence environment, it is thus an improved set-top box, which he said on appendix page 1030. And this is consistent with the dictionary definition of set-top box in the record. Has this patent expired? It has, Your Honor. Finally, on the issue between figure 2 and figure 3, which I think is just the heart of the matter on my opponent's argument. Figure 2 is described as a schematic block diagram illustrative of the user television equipment that happens to have a box labeled figure 2, a set-top box. Figure 3 is described as a generalized schematic block diagram of portions of figure 2. There is no divergence between figures 2 and figures 3. They are related. But the specification goes on, on appendix page 142 in column 5, lines 48 to 53, to say that figure 3's control circuitry may be in the set-top box arrangement of figure 2. And it's that term arrangement that's key. They try to read out that term from the specification. But the arrangement of components in figure 2 includes other items not depicted in figure 3. A remote control. A secondary storage device that is directly between the set-top box and the display. Those are not there. All that specification states is that figure 2's, the arrangement of the set-top box in figure 2 could be in figure 3. But it does not mean that a set-top box can never be a computer. So if the court doesn't have any further questions, that deals with the issues I want to talk about today. Thank you, Mr. Silver. Ms. Kelly has some rebuttal time. Three and a half minutes or so. Yes. In discussing the meaning of a set-top box, what my colleague here just said to this court is very similar to what Comcast said below. They provided a means-plus-function analysis. They have told you that anything that performs the functions of tuning television and relaying those signals to a processor is a set-top box because it provides the function of that control circuitry. If Comcast wanted to do a means-plus-function analysis for the term set-top box, then they could have done so. There was no means-plus-function analysis done. Instead, Comcast's position was that Wogowski's computer 110 is literally a set-top box, and that is not a proper construction of the word set-top box. A set-top box, just like a television, just like a computer, that is the name of a household object. We all know what a set-top box is. It's the little box that sits nearby the television. But you never said that to the court, huh?  But you didn't say it. No, Rovi didn't. But Rovi did point the board, upon the board asking at the oral hearing, Rovi did point the board to the difference between figure 2 and figure 3. And if you look at the portion of the specification that my colleague cited to you, describing the difference between figure 2 and figure 3, it states at Appendix 142, the functions of control circuitry 42 may be provided using the set-top box arrangement of figure 2. Alternatively, these functions may be integrated into an advanced television receiver, personal computer television, or other suitable arrangement. The specification specifically says that a set-top box is an alternative to a PC convergence environment. A set-top box arrangement, that is the name of a particular structure, and a set-top box is not literally a computer. Those are two different objects. They have two different names. And by saying that the computer was literally a set-top box, that was an error that I think is directly in contradiction to what the specification says and the error that the board raised at the oral hearing. Which, of course, what a reference teaches is a question of fact, and we owe deference to the board on that question of fact. Had the board cited this and then also provided some sort of analysis as to why a computer was literally a set-top box, or had the board provided a means plus function analysis of the term set-top box, I agree we would owe deference, or you would owe deference to them. But none of that is in the record. The board did not cite any of that. The board didn't cite any evidence at all. The board cited only two portions of petitioner's brief that discussed the computer 110 being a set-top box, but those were just statements that already assumed the premise. It's hardly surprising that the board didn't articulate some of this stuff, which wasn't argued to it. The board noted during the oral argument that regardless of what Roe v. raised in its brief, it had an obligation to do this, and then it didn't satisfy that obligation. And I think while you may not have much sympathy for Roe v. in this case, the board still has an obligation and the board still failed. Sympathy isn't involved. I appreciate that. Thank you. And I think the board still has an obligation, regardless of what patent owner ever does, in order to point to evidence in the record and articulate a specific rationale for every single claim limitation. And here the board did not do that. And Magnum Oil tells us that the board needs to do this even if patent owner never raises the argument at all. In this case, when the board raised the argument and asked Roe v., do you contest this limitation? Roe v.'s counsel said, yes, we do. And basically said, on the same basis you just identified. The difference between figure two and three. Your light is on. Thank you. We will take the case under advisement that is submitted.